IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>WAUGH CHAPEL SOUTH, LLC, <em>et al.</em></td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiffs</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>CIVIL NO.: WDQ-11-0841</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>UNITED FOOD & COMMERCIAL<br>WORKERS UNION LOCAL 27, <em>et al.</em></td><td>*</td><td></td></tr>
<tr><td></td><td></td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Waugh Chapel South, LLC, WCS LLC, WCS Properties Business Trust, and ELG Inglewood LLC (collectively, "the WCS plaintiffs") sued United Food and Commercial Workers Union Local 27 ("UFCW 27"), United Food and Commercial Workers Union Local 400 ("UFCW 400") and the Mid-Atlantic Retail Food Industry Joint Labor Management Fund ("the Fund") (collectively, "the defendants") for violations of the Labor Management Relations Act, 29 U.S.C. § 151 *et seq.* ("LMRA"). For the following reasons, the defendants' motion to reassign will be denied. UFCW 27 and 400's motion to dismiss will be granted in part and denied in part. The Fund's motion to dismiss will be granted.[1]

---

[1] As no hearing is necessary, the parties' requests for a hearing, ECF Nos. 31, 36, will be denied.

I.   Background[2]

The WCS plaintiffs are developing two commercial real

estate projects in Maryland: the Village at Waugh Chapel South

("Waugh Chapel") and the Woodmore Towne Centre at Glenarden

("Woodmore").   ECF No. 51 ¶1.   A portion of the land was used

for mining gravel.   ECF No. 31 Attach. 5 ¶4.    Each development

will include a supermarket operated by Wegmans Food Markets,

Inc. ("Wegmans").   *Id.*   Wegmans does not employ union labor.

*Id.* ¶2.

The Fund is an organization associated with UFCW 27 and

400, unions that have collective bargaining agreements with

Giant Food, LLC and Safeway, Inc. grocery stores.   The Fund's

purposes include "improving labor-management relations."   ECF

No. 51 ¶10.   Its "activities are limited to government petition-

ing activity [including] petitioning federal, state and /or

local . . . regulatory and/or judicial authorities."   *Id.*

---

[2] For the motions to dismiss, the well-pled allegations in the
WCS plaintiffs' complaint are accepted as true.   *Brockington v.
Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).   A court may
consider "documents incorporated into the complaint by
reference, and matters of which a court may take judicial
notice" without converting a 12(b)(6) motion into a motion for
summary judgment.   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 322 (2007).   A district court may take judicial
notice of "matters of public record."   *Clark v. BASF Salaried
Emps.' Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004),
*aff'd*, 142 F. App'x 659 (4th Cir. 2005).   State court filings are
matters of public record.   *See, e.g.*, *Giragosian v. Ryan*, 547
F.3d 59, 66 (1st Cir. 2008); *Henson v. CSC Credit Servs.*, 29
F.3d 280, 284 (7th Cir. 1994).

A.    The Waugh Chapel South Project

To build the Waugh Chapel project, the WCS plaintiffs'
developers[3] applied to Anne Arundel County to rezone the project
property, from agricultural and residential to mixed-use
commercial.[4]  On February 28, 2008, Anne Arundel County held a
hearing on the application.  ECF No. 31 Attach. 4.   Charles
Storm, the developers' engineering consultant, testified that
there were no environmental issues with the property or planned
project.  Id. at 5.  On March 23, 2006, the county Office of
Administrative Hearings approved the application.  Id. at 11-12.

On December 1, 2007, the Maryland Department of the Envi-
ronment ("MDE") entered a consent decree with the WCS
plaintiffs' developers after determining that pollutants from a
gravel mine on the Waugh Chapel property had seeped into the
groundwater.  ECF No. 31 Attach. 5 ¶¶4, 6, 9.

On April 21, 2008, the County approved a detailed site
development plan for the Waugh Chapel project.  ECF No. 51 ¶36.

On August 21, 2008, George Murphy Jr., then Secretary-
Treasurer of UFCW 27,[5] through his attorney G. Macy Nelson,
petitioned Anne Arundel County to rescind the March 2006

---

[3] Greenberg Gibbons Commercial Corporation and BBSS, Inc.   ECF
No. 31, Attach. 4 at 1.

[4] The gravel mine is in the process of environmental reclamation.
ECF No. 31, Attach. 4 at 1, 3.

[5] Now president of UFCW 27.  ECF No. 51 ¶35.

rezoning decision because, he claimed, the MDE consent decree demonstrated that Storm had not disclosed environmental issues which subjected the permit to rescission.  ECF No. 51 ¶35. After challenges to Murphy's standing and a subpoena on UFCW 27, Nelson withdrew the petition.  ECF No. 35 Attach. 7.  The defendants paid Murphy's legal expenses.  *Id.*

On November 5, 2009, Anne Arundel County approved the WCS plaintiffs' request for an extension of time to pay fees and post bonds for a Public Works Agreement permit for the Waugh Chapel project.  *Id.* ¶36.  On December 3, the Patuxent Riverkeeper, an environmental organization, and others appealed the November 5 extension.  *Id.* ¶37.  Nelson represented the appellants.  *Id.*  On February 9, 2010, the WCS plaintiffs paid the fees and filed the bond.  *Id.*  On March 9, 2010, Nelson withdrew the appeal.  *Id.*

On March 15, 2010, the Anne Arundel County Council adopted a resolution approving Tax Increment Financing ("TIF"), bonds to finance the Waugh Chapel project.  ECF No. 31 Attach. 8 at 2. On March 17, 2010, Robert Smith and Madonna Brennan,[6] through Nelson, filed a complaint in the Circuit Court for Anne Arundel County alleging procedural defects in the TIF resolution and seeking a preliminary injunction of the TIF.  ECF No. 51 ¶39.

---

[6] It is unclear whether Smith and Brennan have any connections to the parties or how they came to work with Nelson.

The Anne Arundel County Council held a hearing, and on May 3, 2010, repealed the March resolution because it had been adopted without the required hearing; the County also re-authorized the TIF.  ECF No. 31 Attach. 8 at 2-4. One week later, the County Executive signed the new resolution into law, and the Circuit Court dismissed the petition as moot.  ECF No. 51 ¶39.

On June 28, 2010, Smith sued the MDE and others[7] in the Circuit Court for Anne Arundel County.  *Id.* ¶40.  He claimed that MDE's inadequate enforcement of the December 1, 2007 consent decree was causing a nuisance; he sought an injunction of development until the contamination was abated.  ECF No. 31 Attach. 9 ¶¶11-12.  On November 12, 2010, Smith added the Patuxent Riverkeeper as a plaintiff.  Nelson represented Smith and the Riverkeeper.  *Id.*  They retained Dr. Edward Bouwer, a Geography and Environmental Engineering professor at Johns Hopkins University, to assess the contamination and remediation. On December 10, 2010, Dr. Bouwer concluded that the remediation was causing hazardous water contamination.[8]  ECF No. 31 Attach.

---

[7] None of the Waugh Chapel plaintiffs was named as a defendant in that suit, but Greenberg Gibbons Commercial, and BBSS, were defendants.  ECF No. 51 ¶36; *Smith v. Md. Dep't of the Env't, et al.*, No. 02-C-10-153663.

[8] On December 28 and 29, 2010, Anne Arundel County Executive John Leopold wrote to officials at MDE and the directors of the county's office of Inspections and Permits, urging them to review Dr. Bouwer's report and noting his concern about the contamination.  ECF No. 31 Attachs. 11, 12.

10.   On May 17, 2011, the Circuit Court for Anne Arundel County dismissed the claims, finding that there was no evidence of a new nuisance, and the remediation was reducing the preexisting nuisance.  ECF No. 58 Attach. 1.[9]

On June 29, 2010, MDE renewed the mining permit for the Waugh Chapel property, releasing the WCS plaintiffs from that permit.[10]  ECF No. 51 ¶41.  On July 1, 2010, Smith and the Riverkeeper, through Nelson, petitioned for judicial review, and a stay, of MDE's decision.  *Id.*  On July 28, 2010, MDE issued a corrected mining permit renewal.  ECF No. 51 ¶42.  On August 26, 2010, Smith, the Riverkeeper, and two others petitioned for review of the corrected permit.  *Id.*  On September 3, 2010, the Circuit Court for Anne Arundel County dismissed Smith's first petition for lack of standing and on the merits.  ECF No. 31 Attach. 13 at 5-7.  The petitioners appealed, and the appeal has not been decided.  *See* ECF No. 31 Attachs. 14, 16.  They consented to a dismissal of the second petition.  ECF No. 51 ¶42.  Nelson represented the petitioners.  *Id.*

---

[9] Smith appealed to the Maryland Court of Special Appeals.  On February 15, 2012, Smith dismissed Greenberg Gibbons and the Anne Arundel parties because the "virtual completion of the development project [h]as made his claims against those Appellees moot."  ECF No. 61 Attach. 1 at 1.  Smith's claims against BBSS and another defendant are pending.  *Id.*

[10] BBSS remained on the permit.  ECF No. 31 Attach. 14.

On May 26, 2011, Smith and Sandra Bowie, represented by
Nelson, appealed Anne Arundel County's issuance of four grading
permits for Waugh Chapel.  ECF No. 35 Attach. 12.  On June 23,
2011, Smith, Bowie, and Rosie Shorter,[11] through Nelson, appealed
four building permits for Waugh Chapel.  *Id.*  They appealed a
fifth building permit on July 6, 2011.  *Id.*  The Anne Arundel
County Board of Appeals handled the four grading permit and five
building permit appeals.  ECF No. 51 ¶44.  The WCS plaintiffs
moved to dismiss the appeals and subpoenaed the defendants'
financial records to determine whether they were paying Smith,
Bowie, and Shorter's legal fees.  *Id.* ¶45.  Soon after the
subpoenas issued, Smith, Bowie, and Shorter dismissed the
appeals.  *Id.*  The WCS plaintiffs "incurred substantial costs
and expenses in opposing the appeals."  *Id.*

B.   Woodmore Towne Centre

On October 2, 2007, the Prince George's County Council
approved a Detailed Site Plan for the Woodmore project.  On
December 30, 2007, L. Anthony Perez, a member of UFCW 400,
petitioned for judicial review of the approval, alleging the
plan would create traffic problems near his home.  ECF No. 51
¶58.  On May 13, 2008, the Honorable Thomas P. Smith of the
Circuit Court for Prince George's County found that Perez's
"sole motive . . . was to further the interests of UFCW 400" and

---

[11] Shorter and Bowie's relationship with the parties is unclear.

his articulation of his "personal concern[s were] pretextual."
ECF No. 31 Attach. 20 at 16:10-15, 18:17-18.  Judge Smith found
that "the detailed site plan . . . has no direct bearing on
traffic."  *Id.* 18:14-17.  On May 21, 2008, Judge Smith held that
Perez's motive in filing the action "ma[de] no difference," he
had standing to bring the claim.  *Id.* at 12-13.

On July 22, 2008, after further briefing, the Circuit Court
for Prince George's County affirmed the County Council and
dismissed the appeal.  ECF No. 51 ¶59.  UFCW 400 paid Perez's
legal fees, and Nelson represented Perez for part of the
dispute.  *Id.* ¶¶58-59.

On March 19, 2010, the MDE issued a permit authorizing
Woodmore Town Centre to extend a roadway to the Woodmore
development, through a wetlands area.  ECF No. 51 ¶60.  On April
16, 2010, the Patuxent Riverkeeper, through Nelson, petitioned
for judicial review of the permit and sought a preliminary
injunction.  ECF No. 31 Attach. 21 at 1.  The Circuit Court for
Prince George's County dismissed the petition for lack of
standing.  *Patuxent Riverkeeper v. Md. Dep't of the Env't*, No.
10-11819, 2010 WL 6599778 (Md. Cir. Ct. Dec. 1, 2010).  On
February 18, 2011, the Maryland Court of Appeals granted
*certiorari* to consider the standing issue.  *Patuxent Riverkeeper
v. Md. Dep't of the Env't*, 418 Md. 190, 13 A.3d 798 (2011).  On
September 30, 2011, the Maryland Court of Appeals held that the

Riverkeeper had standing to challenge the permit and remanded to the Circuit Court. *Patuxent Riverkeeper v. Md. Dep't of the Env't*, 422 Md. 294, 310, 29 A.3d 584, 594 (2011).

On July 7, 2010, The Patuxent Riverkeeper, through Nelson, sued the United States Army Corps of Engineers ("the Corps"), the United States Environmental Protection Agency ("EPA"), and officials of both agencies in the United States District Court for the District of Maryland, seeking review of the Corps's decision to verify a permit application for development of the Woodmore project. *Patuxent Riverkeeper v. U.S. Army Corps of Eng'rs,* No. AW-10-1834.  On November 16, 2010, United States District Judge Alexander Williams permitted the Woodmore developers to intervene as defendants.  No. AW-10-1834, ECF No. 14.  Riverkeeper's complaint alleged that the permit would "impact 33,407 square feet of forested nontidal wetlands" in violation of the Clean Water Act, and the Corps's decision to verify the permit application was arbitrary and capricious.  No. AW-10-1834, ECF No. 1 ¶¶29, 40-76.

On September 26, 2011, Judge Williams granted summary judgment for the *Patuxent Riverkeeper* defendants and closed the case.  No. AW-10-1834, ECF No. 43.  Judge Williams held that the

Riverkeeper plaintiff lacked standing to challenge the permit.[12]
*Id.* at 10-11.

C.   Litigation in this Court

On March 31, 2011, the WCS plaintiffs filed this suit
alleging violations of the LMRA.  ECF No. 1.  The WCS plaintiffs
alleged that the defendants had financed the Waugh Chapel and
Woodmore litigation "with the objective of forcing [the WCS
plaintiffs] to cease their business relationship with Wegmans."
ECF No. 51 ¶¶35, 37, 39, 40-43, 46, 47, 54, 59, 61, 62.  The WCS
plaintiffs alleged that "the appeals and litigation filed by the
Defendants constitute a series of overlapping, repetitive,
baseless and sham lawsuits."  *Id.* ¶21.

On April 27, 2011, the defendants moved to assign *Waugh
Chapel* to Judge Williams as related to *Patuxent Riverkeeper v.
U.S. Army Corps of Engineers*, No. AW-10-1834.  ECF No. 22.   On
May 25, 2011, the Fund moved to dismiss.  ECF No. 27.  On the
same day, UFCW 27 and 400 jointly moved to dismiss.  ECF No. 31.
The WCS plaintiffs opposed the motions.  ECF Nos. 24, 34, 35.
On October 27, 2011, with the defendants' consent, the WCS
plaintiffs filed an amended complaint.  ECF No. 49.  The
defendants filed supplemental memoranda in support of the motion
to dismiss, ECF Nos. 52, 53, to which the WCS plaintiffs

---

[12] The court did not consider whether the litigation was
frivolous.  *Id.* at 7-14.

responded, ECF Nos. 57, 58, and the defendants replied, ECF Nos. 61, 62.

II.  Analysis

A.  Motion to Reassign

The defendants seek to assign this case to Judge Williams under local Rule 103(1)(b)(iii) because they contend it is related to *Patuxent Riverkeeper v. U.S. Army Corps of Engineers*, No. AW-10-1834.  ECF No. 22.  The defendants contend that Judge Williams's familiarity with *Patuxent Riverkeeper* places him in the best position to determine whether that case is protected First Amendment petitioning activity or "sham" litigation that may support liability in this case under 29 U.S.C. § 158 (b)(4)(ii)(B).  ECF No. 22 Attach. 1 at 6-7.

Under Local Rule 103(1)(b), the Court may, after notice from a party, reassign a case to another judge if it and a previous or pending civil action in this Court are related. Actions are related if they:

> (1) arise from the same or identical transactions, happenings, or events; (2) involve the identical parties or property; (3) involve the same patent or trademark; or (4) for any other reason would entail substantial duplication of labor if heard by different judges

LR 103(1)(b)(i).

The WCS plaintiffs argue that *Patuxent Riverkeeper* "is but one in a series of lawsuits and administrative challenges

11

undertaken by the defendants as part of their secondary boycott activity" and "the issue in [this case] is whether the flurry of litigation and administrative challenges as alleged in the Complaint was part of a pattern or practice of successive filings brought without regard to the merits." ECF No. 24 at 13-14. They contend that resolution of this case by this Court would not entail "substantial duplication of labor" because (1) Judge Williams did not determine whether *Patuxent Riverkeeper* is a sham litigation, and (2) the court that decides this suit will need to "scrutinize *all* of the cases, including the Patuxent Riverkeeper litigation" to determine whether "collectively [they] constitute a . . pattern and practice of [sham] litigation." *Id.* (emphasis added).

As Judge Williams did not consider the issues raised in this case, denying the motion to reassign will not "entail substantial duplication of labor." LR 103(1)(b)(i). The motion to reassign will be denied.

B.   The Motions to dismiss

UFCW 27 and UFCW 400, and separately the Fund, moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint. ECF No. 27; ECF No. 31.

1.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief may be granted.

12

Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that

13

the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

A court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" without converting a 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A district court may take judicial notice of "matters of public record." *Clark v. BASF Salaried Emps.' Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004), *aff'd*, 142 F. App'x 659 (4th Cir. 2005). State court filings are matters of public record. *See, e.g.*, *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

2. The Labor Management Relations Act

The LMRA prohibits labor organizations from "threaten[ing], coerc[ing], or restrain[ing] any person engaged in commerce" for the purpose of forcing "any other employer to recognize or bargain with [that] labor organization." 29 U.S.C. § 158(b)(4)(ii).

3. *Noerr-Pennington* Immunity

The defendants contend that the WCS plaintiffs' claims are "barred by the *Noerr-Pennington* doctrine." ECF No. 31 Attach. 1 at 1; ECF No. 27 Attach. 1 at 2.

14

"The *Noerr-Pennington* doctrine grants First Amendment immunity" from civil liability to participants in petitioning activity such as litigation. *IGEN Int'l v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003). The First Amendment and *Noerr-Pennington* do not protect "sham" litigation: litigation that is (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) instituted in subjective bad faith. *Id.* at 312 (*quoting Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993)). Established in the context of anti-trust litigation, *Noerr-Pennington* applies equally to labor litigation. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 691-92 (5th Cir. 2010).[13]

When the defendants raise *Noerr-Pennington* immunity in a motion to dismiss, the burden shifts to the plaintiffs to establish that the litigation in question was a sham. *IGEN Int'l*, 335 F.3d at 312.[14]  "[I]n order to avoid chilling a

---

[13] *See also BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 537 (2002) (Scalia, J., concurring)("[T]he implication of our decision today is that, in a future appropriate case, we will construe the [NLRA] in the same way we have already construed the Sherman Act: to prohibit only lawsuits that are *both* objectively baseless *and* subjectively intended to abuse process.").

[14] *See also Agfa Corp. v. U. Mktg. Grp., Inc.*, No. , 2003 WL 21555087 at *3 (S.D.N.Y. 2003) ("[T]o invoke the sham exception . . . a party *must allege* that the lawsuit is objectively

litigant's exercise of the right to petition," the WCS plaintiffs must establish a threshold showing of objective baselessness to survive a motion to dismiss. *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 223 (S.D.N.Y. 2002). The plaintiff must provide "particulars [in the complaint or its opposition to the motion to dismiss] to support the claim" of baselessness. *Thomson Info. Servs., Inc. v. Lyons Commercial Data, Inc.*, No. 97-7716, 1998 WL 193236 at *1 (S.D.N.Y. Apr. 21, 1998).

> i.   The Sham Exception Does Not Require Access-
>      Barring

UFCW 27 and 400 contend that the "defining element of a 'sham' is that the litigation . . . deprived the plaintiffs of their own First Amendment right to be heard" by barring access to the courts. ECF No. 31 Attach. 1 at 22.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* ("*PRE*"), the Supreme Court stated "a two-part definition of 'sham' litigation." 508 U.S. 49, 60 (1993). Sham litigation is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* If the litigation is objectively baseless, the Court "consider[s] the litigant's subjective motivation." *Id.* The Court defined sham litigation without reference to

baseless" and that party "carr[ies] the[] burden" on a motion to dismiss. (emphasis added)).

16

access-barring. Instead, it focused on the action's likelihood of success on the merits and the litigant's motive in bringing the challenged action. *Id.*

Earlier in *PRE*, the Court noted that it had previously "recognized . . . that the institution of legal proceedings without probable cause will give rise to a sham if such activity effectively bars competitors from meaningful access to adjudicatory tribunals." *Id.* at 58 (internal quotation marks and citations omitted). The Court did not hold that *only* access-barring litigation is a sham; it made clear that baseless litigation is a sham. *Compare id.* at 58 (baseless litigation "will give rise to a sham if . . . [it] effectively bars" access), *with id.* at 61 ("*Only if* challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." (emphasis added)).

Accordingly, access-barring litigation may be a sham only if it is objectively baseless and in subjective bad faith. *See PRE*, 508 U.S. at 58.[15] The WCS plaintiffs were not required to

---

[15] The defendants' reliance on *Racetrac Petroleum, Inc. v. Prince George's County* is misplaced. 601 F. Supp. 892 (D. Md. 1985), *aff'd*, 786 F.2d 202 (4th Cir. 1986). In that case, which preceded *PRE* by several years, the district court applied *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508 (1972), in an anti-trust case. *Racetrack Petroleum*, 601 F. Supp. at 909. The court observed that *California Motor Transport* had caused confusion "in the lower courts concerning the scope of the sham exception to *Noerr-Pennington* immunity." *Id.*

allege that the litigation barred their access to the courts, and the complaint will not be dismissed for that reason.[16]

> ii. The Sham Exception to *Noerr-Pennington*
> Requires a Showing of Objective Baselessness

The WCS plaintiffs must allege and show that each action was baseless, even if they allege a series of sham actions. *See Bryant*, 597 F.3d at 691-92 (plaintiff alleging series of sham lawsuits had burden to show each was objectively baseless).

The WCS plaintiffs contend that "when . . . a pattern of successive filings is at issue, it must not be alleged or proved that each filing was baseless." ECF No. 35 at 11. Its reliance on *USS-POSCO Indus. v. BE&K Constr. Co.* is unpersuasive. 31 F.3d 800 (9th Cir. 1994). *California Motor Transport v.*

---

It then applied a test that is inconsistent with *PRE*: the district court considered only "the actor's immediate purpose" in instituting the petition, determining that "[i]f the actor seeks to . . . bar a competitor from the decision-making process, there is no protection." *Id.* at 910.

*PRE* clarified that the court must consider the objective merits of the case before considering intent, and demonstrated that access-barring was not required; it has superseded *Racetrack Petroleum*.

Further, in *Racetrack Petroleum*, the plaintiffs had *initiated*, and lost, the alleged sham litigation. *Id.* at 911. As the district court noted, "there can be no suggestion that . . . the plaintiff was subjected to baseless litigation" when the plaintiff initiated that litigation. *Id.*

[16] UFCW 27 and 400's reliance on *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Const. Trades Council* is similarly unavailing. 485 U.S. 568 (1988). In that case, the Supreme Court considered what activity was coercive. *Id.* at 578. It did not address the sham litigation exception to the *Noerr-Pennington* doctrine. *See id.*

18

*Trucking Unlimited*, on which *POSCO* relied, requires the plaintiff to prove the baselessness of each claim in an alleged pattern of sham litigation.  404 U.S. 508, 513 (1972) ("[A] pattern of *baseless*, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused." (emphasis added)).  *PRE* indicates that no litigation "may be sham" unless it is objectively baseless.[17]

Further, *POSCO* has never been relied on by the Fourth Circuit.[18]  This Court will not adopt *POSCO*.

---

[17] 508 U.S. at 57-58 ("Nothing in *California Motor Transport* retreated from" the principle that litigation is a sham only if it lacks "objective reasonableness"; the *California Motor Transport* Court dealt with "baseless, repetitive claims." (internal quotation marks and citations omitted)); *see also Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 747 (1983) ("[T]he filing of a meritorious law suit, even for a[n improper] motive, is not an unfair labor practice.").

[18] The Second Circuit is the only Circuit Court which has considered the *POSCO* rule.  *See Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 101 (2d Cir. 2000).  The Seventh Circuit recently implicitly rejected the *POSCO* rule.  *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 842 n.3 (7th Cir. 2011) (referencing the *POSCO* rule, noting that the Seventh Circuit had not "faced that issue," then citing *PRE* statement that a "winning lawsuit is by definition . . . not a sham" and *California Motor Transport* statement that "a pattern of baseless, repetitive claims" may constitute a sham).  In *POSCO*, the Ninth Circuit found dispositive that the *POSCO* defendants succeeded in more than half the actions, suggesting that the objective merit of each underlying action was relevant to its analysis.  *USS-POSCO Indus.*, 31 F.3d at 811.  Accordingly, even under *POSCO*, the WCS plaintiffs would at least be required to show that the claims generally lacked merit.

iii. The WCS Plaintiffs Were a Target of the
Litigation

UFCW 27 and 400 note that "all but one of the . . .
[alleged harassing petitions] sought relief only against
government entities, without suing the developers." ECF No. 31
Attach. 1 at 10.  They contend that the WCS plaintiffs "had the
option of voluntary intervention, [but] they were not haled into
court in" those actions.  *Id.*  The WCS plaintiffs respond that
"each of the actions . . . [was] designed to attack zoning,
financing, and permit approvals with the single objective to
interfere with and obstruct the . . . development[s]."  ECF No.
35 at 24.

A party that instigates litigation against defendants
cannot later claim that the defendants engaged in sham
litigation by defending the suit.  *Racetrack Petroleum*, 601 F.
Supp. at 911.  A lawsuit need not name a party as a defendant to
hale it into court: a developer whose permits are challenged is
dragged into the litigation, though not a party, when revocation
of the permits will prevent completion of its project.  *Cf.*
*Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 400 (4th
Cir. 2001).[19]  Accordingly, that the WCS plaintiffs were not
defendants in the earlier suits is not dispositive.

----

[19] "*PRE* is not so restrictive as to protect only the [petition-
ing] litigant." *Baltimore Scrap*, 237 F.3d at 400.  The Fourth
Circuit entertained claims by a scrap metal company that a

iv.   Objective Baselessness of the Alleged Sham
      Petitions

UFCW 27 and 400 argue that the complaint does not state a
claim because it includes only "conclusory" allegations that the
litigation was baseless.  ECF No. 31 Attach. 1 at 33.    When
"there is no dispute over the predicate facts of the underlying
proceeding, a court may decide [objective baselessness] as a
matter of law."  *PRE*, 508 U.S. at 63.  The burden of alleging
baselessness is not so high as proving it on a summary judgment
motion.  *Smithfield Foods, Inc. v. U. Food & Comm'l Workers
Int'l Union*, 593 F. Supp. 2d 840, 843-44 (E.D. Va. 2008)
(deciding motion for judgment on the pleadings under Rule
12(b)(6) standard).

Successful litigation "is by definition a reasonable effort
at petitioning for redress and therefore not a sham."  *PRE*, 508
U.S. at 61 n.5.  However, losing litigation is not necessarily
baseless.  *Id.*  When a litigant institutes a proceeding knowing,
or under circumstances in which he should know, that he lacks
standing, the proceeding is baseless.  *Balt. Scrap*, 237 F.3d at
400.  On the other hand, when the litigation is resolved only
after thoughtful consideration, and there is recognition of some

competitor was covertly funding challenges to zoning regulations
by a citizen environment group, in violation of antitrust laws.
The court determined that the competitor's behavior was immune
under *Noerr-Pennington*, was not baseless, and the competitor's
non party status did not strip it of *Noerr-Pennington* protect-
ion.  *Id.* at 399-400.

merits of the claim, despite denial of "a logical extension" of an existing rule, the litigation was not baseless.  *Id.*

With respect to the subjective intent requirement of a sham litigation claim, courts are "lenient in allowing scienter issues . . . to survive motions to dismiss" because those issues "are appropriate for resolution by the trier of fact."  *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 693-94 (2d Cir. 2009).[20]

The WCS plaintiffs repeatedly alleged that the defendants covertly instigated and supported 18 actions with the subjective intent to "forc[e] [the WCS plaintiffs] to cease their business relationship with Wegmans."  ECF No. 51 ¶¶35, 37, 39-42, 44, 58, 60, 61.  It alleged that the actions "constitute a series of overlapping, repetitive, baseless and sham lawsuits and [administrative] appeals."  *See id.* ¶21.  The WCS plaintiffs must not only allege but also "show" that the plaintiff is entitled to relief.  *Ashcroft*, 129 S. Ct. at 1950.  Accepting the alleged facts as true and drawing all inferences in favor of

---

[20] *Cf. In re Premier Auto. Servs., Inc.* 492 F.3d 274, 280 (4th Cir. 2007) (in bankruptcy context, when litigant is required to allege bad faith, on motion to dismiss, allegation of facts supporting an inference of bad faith is sufficient); *Chapin v. Knight-Ridder, Inc.*, 933 F.2d 1087, 1104 n.4 (4th Cir. 1993) (in defamation claim, whether the defendant had the requisite intent is a question of fact not "properly before a court on . . . a motion to dismiss").

the WCS plaintiffs, they have shown objective baselessness for one of the 18 alleged sham actions.

### a.    Successful Petition

The Anne Arundel County Council determined that, as the petitioners alleged, the original TIF resolution was enacted without a public hearing, in violation of the Maryland Constitution. ECF No. 31 Attach. 8 at 3. Accordingly, the challenge to that resolution was not baseless. *PRE*, 508 U.S. at 61 n.5 (successful litigation is by definition not baseless).

### b.    Cases Turning on the Riverkeeper's Standing

The Riverkeeper's Maryland court challenge to the Woodmore permits has not been evaluated on the merits, but the Maryland Court of Appeals has held that the Riverkeeper had standing to bring the suit. *Patuxent Riverkeeper*, 422 Md. at 310, 29 A.3d 594. As the state court has not decided the merits of the suit, the Court will not assess whether it is objectively baseless; to do so would usurp the state circuit court's role. *See Bill Johnson's Rests., Inc.*, 461 U.S. at 746-47 (NLRB "must not deprive a litigant of his right to have genuine state-law legal questions decided by the state judiciary."). Further, as the burden is on the WCS plaintiffs to establish baselessness, the Court's inability to infer that a suit is baseless prevents

application of the sham exception.  *See IGEN Int'l*, 335 F.3d at 312.

The Circuit Court for Anne Arundel County dismissed Smith and the Riverkeeper's challenge to the June 29 permit for lack of standing, and on the merits because it found that MDE "complied with the statutory scheme governing surface mine permit renewals."  ECF No. 31 Attach. 13 at 7. The appeal was stayed pending the Maryland Court of Appeals's decision on the Riverkeeper's standing in *Patuxent Riverkeeper*, 422 Md. at 294, 29 A.3d at 584.  ECF No. 31 Attach. 16.  Now that the Court of Appeals has concluded that the *Riverkeeper* has standing, it is ripe for state court review and nothing in the record permits an inference of baselessness.  *See Bill Johnson's Rests., Inc.*, 461 U.S. at 746-47; *IGEN Int'l*, 335 F.3d at 312.

Judge Williams did not consider the frivolity of the Riverkeeper's federal challenge to the permits, and his opinion granting summary judgment does not suggest that the Riverkeeper should have known it lacked standing.  *Patuxent Riverkeeper*, No. AW-10-1834, ECF No. 43 at 7-14.  In addition, the Maryland Court of Appeals applied the federal standing rules to decide that the Riverkeeper had standing in a similar challenge.  *See Patuxent Riverkeeper*, 422 Md. at 297.  Accordingly, the Court cannot infer that the federal challenge was a baseless sham.

c.    Petitions Withdrawn to Avoid Subpoena

Nelson, representing the petitioners in the alleged sham actions, voluntarily withdrew or dismissed 10 of the challenges to the Waugh Chapel South project soon after the WCS plaintiffs sought or served subpoenas on UFCW 27 and 400 for financial records.  ECF No. 51 ¶¶35, 44.  Though this suggests that the defendants instigated the actions with an improper subjective intent--which they may have tried to conceal by withdrawing the challenges--it conveys nothing about the objective merits of the actions.  *See PRE*, 508 U.S. at 61 n.5 (ultimately unsuccessful action is not necessarily baseless).  Likewise, that "other individuals were added as movants" to George Murphy Jr.'s motion to rescind zoning approval for the Waugh Chapel South project when his standing was challenged, ECF No. 51 ¶35, does not enable the Court to infer that "no reasonable litigant could realistically expect success on the merits."  *PRE*, 508 U.S. at 60.

Little information is available about the petitioners' challenge to the corrected mining permit renewal, other than that they consented to dismiss it after appealing the July 1, 2010 permit challenge.  *See* ECF No. 51 ¶42.  As discussed above, voluntary withdrawal of a petition does not indicate that it is baseless.

d.    Petitions That Became Moot

The WCS plaintiffs alleged that the Riverkeeper withdrew its December 2009 appeal of Anne Arundel County's extension of time for the WCS plaintiffs to pay public works fees and bonds after they paid those fees and the appeal became moot. ECF No. 51 ¶37. Had the petitioners maintained the appeal despite its clear mootness, the WCS plaintiffs might be able to show that it was baseless. Instead, the petitioners withdrew the appeal when it became moot. That withdrawal does not enable the Court to infer baselessness. *See IGEN Int'l*, 335 F.3d at 312.

e.    Petitions Dismissed After Thoughtful Consideration

Smith supported his June 29, 2010 suit for enforcement of the MDE consent decree with an expert report. ECF No. 31 Attach. 10. In a 21 page opinion, the Circuit Court for Anne Arundel County assessed the ten counts of the complaint, ultimately dismissing six with prejudice and two without prejudice, and granting summary judgment for the defendants on the remaining two. ECF No. 58 Attach. 1. The court noted that some of the issues in the case were "complicated," and did not summarily reject any of the claims. *See id.* at 5-21. The court resolved the litigation only after thoughtful consideration, demonstrating that it was not objectively baseless. *Balt. Scrap*, 237 F.3d at 400.

26

f.   Perez's Traffic Challenge

Like the petitions withdrawn to avoid subpoenas, Judge Smith's finding that Perez challenged the Woodmore site plan only to further the interests of UFCW 400 does not support an inference of objective baselessness.  As Judge Smith noted, Perez's subjective motivation "ma[de] no difference," as he had standing, and his claim was not clearly frivolous or nonjust-iciable.  ECF No. 31 Attach. 20 at 12-13.  That the detailed site plan Perez challenged "ha[d] no direct bearing on traffic," however, suggests that Perez's traffic-disruption-based challenge to the plan might have been objectively baseless.  *Id.* at 18:14-17.  Accordingly, the WCS plaintiffs have sufficiently alleged baselessness with respect to Perez's challenge to the site development plan.

The WCS plaintiffs have alleged a violation of the LMRA that is not protected by *Noerr-Pennington* with respect to Perez's challenge to the Woodmore project.  The other alleged sham petitions are protected.  Count I, the claim based on challenges to the Waugh Chapel project, will be dismissed with prejudice.  Count II will survive, but will be limited to Perez's petition.

4.   Damages

The defendants contend that the WCS plaintiffs failed to state a claim for recoverable damages, and accordingly did not

27

state a claim for which relief may be granted.  ECF No. 31 Attach. 1 at 42-43.  They argue that the LMRA does not permit recovery of the cost of prior litigation, and the WCS plaintiffs cannot support a claim for damages based on delay or risk in the development of the projects.

The LMRA permits an injured party to recover "the damages by him sustained."  29 U.S.C. § 187(b).  Damages may include the expense of prior litigation wrongfully instituted against the § 187 plaintiff.  *See Bill Johnson's Rests.*, 461 U.S. at 747 (NLRB may order employer to "reimburse the employees whom he had wrongfully sued for their attorneys' fees and other expenses"); *Local 32B-32J, Serv. Emps. Union, AFL-CIO v. N.L.R.B.*, 68 F.3d 490, 496 (D.C. Cir. 1995) (damages include attorneys' fees from prior litigation when the prior "litigation itself is the illegal act").[21]

---

[21] UFCW 27 and 400's reliance on *Summit Valley Industries, Inc. v. Local 112, Carpenters* is misplaced. 456 U.S. 717 (1982). *Summit Valley* states that when

> an action based on the *same* wrongful act has been *prosecuted* by the plaintiff against the defendant to a successful issue, he can not in a subsequent action recover, as damages, his costs and expenses in the former action.

*Summit Valley*, 456 U.S. at 726 (emphasis added) (internal quotation marks and citation omitted).  If the WCS plaintiffs had previously succeeded on an unfair labor practice claim, then tried to recover costs from that action in this one, they would be barred.  *See id.*

Here, the WCS plaintiffs claim that the previous lawsuits, instituted by the defendants, constitute unfair labor practices. Accordingly, *Bill Johnson's Restaurants* governs.  461 U.S. at 747.  On the single potential sham litigation claim, the WCS plaintiffs have pled a sufficient injury to survive the motion to dismiss.[22]  *See Kloth v. Microsoft Corp.*, 444 F.3d 312, 325 (4th Cir. 2006) (affirming dismissal of action for failure to state a claim when plaintiffs failed to plead actual injury).

     5.   Secondary Boycotting

Finally, the defendants contend that the challenged actions are primary boycotting, which is protected under the NLRA.  ECF No. 31 Attach. 1 at 45.  The NLRA's prohibition on secondary boycotting--that is, coercing an entity to cease doing business with a non-union entity--excepts "any primary strike or primary picketing" from liability, even if the action otherwise qualifies as secondary boycotting.  18 U.S.C. § 158(b)(4)(B). Section 158 "preserve[s] the right to picket during a strike" on property owned by neutral third parties who work for the

---

[22] UFCW 27 and 400 also contend that the WCS plaintiffs cannot claim damages from alleged risk created by the petitions.  ECF No. 31 Attach. 1 at 43.  The WCS plaintiffs state that they do "not seek recovery for 'risk.'"  ECF No. 35 at 46.  Accordingly, that argument is moot.

29

organization against whom the strike is aimed. *U. Steelworkers of Am., AFL-CIO v. N.L.R.B.*, 376 U.S. 492, 499 (1964).[23]

A union "may not exert pressure on an unrelated, secondary or neutral employer in order to coerce the secondary employer to cease dealing with the primary employer, thereby advancing the union's goals indirectly." *R.L. Coolsaet Const. Co. v. Local 150, Int'l Union of Operating Eng'rs, AFL-CIO*, 177 F.3d 648, 655 (7th Cir. 1999) (internal quotation marks and citation omitted). Union conduct will be deemed secondary, rather than primary boycotting "if *any* object of that activity is to exert improper influence on secondary or neutral parties"--even when "the union acts with mixed motives." *Id.* at 654-55 (internal quotation marks and citation omitted).[24] The union's motive is a question

---

[23]    [Primary p]icketing has traditionally been a major weapon to implement the goals of [a] strike and has characteristically been aimed at all those approaching the situs whose mission is selling, delivering or otherwise contributing to the operations which the strike is endeavoring to halt.

*U. Steelworkers of Am., AFL-CIO v. N.L.R.B.*, 376 U.S. 492, 499 (1964).

[24] UFCW 27 and 400 contend that *Petrochem Insulation, Inc. v. N.L.R.B.* demonstrates that "[c]oncerted union land-use challenges to the construction of non-union businesses are" primary boycotting activities. ECF No. 31 Attach. 1 at 45-46; 240 F.3d 26 (D.C. Cir. 2001). In *Petrochem*, construction unions filed "environmental objections to zoning and construction permits sought by non-union developers and contractors" in an effort to encourage the developers and contractors to unionize or conform to union wage and benefits standards. 240 F.3d at 27. A non-union subcontractor argued that the union behavior

of fact. *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 433 F.3d 1024, 1038 (7th Cir. 2006).

UFCW 27 and 400 argue that boycotting the construction of the developments is indistinguishable from boycotting Wegmans on the Woodmore or Waugh Chapel properties once the developments are built, which would be primary picketing activity. ECF No. 31 Attach. 1 at 46. The distinction, however, depends on whether the union's motive is to advance its goals directly, by a primary picket, or indirectly, by an impermissible secondary boycott. *See R.L. Coolsaet Const.*, 177 F.3d at 654-55. That is a factual question that the Court will not resolve on a motion to dismiss.

The secondary boycotting claim based on Perez's challenge to the Woodmore site plan will survive the motion to dismiss. The claims based on the other petitions will be dismissed for failing to state a claim.

---

was coercive secondary boycotting against it in violation of § 158(b)(4)(B). *Id.* at 28. The District of Columbia Circuit did not assess whether the activity was secondary or primary boycotting, but held that it was protected concerted activity. *Id.* at 31.

In *Petrochem*, the union's actions were directly aimed at non-union developers because of their non-union status. *Id.* at 27. Here, by contrast, the WCS plaintiffs allege that the unions are directing their boycotting at them, the developers, because of the non-union status of their future business partner, Wegmans. ECF No. 51 ¶35. Accordingly, *Petrochem* is not relevant.

6.   Labor Organization

The Fund contends that the WCS plaintiffs failed to state a claim against it because it is not a labor organization.  ECF No. 27 Attach. 1 at 1-2.  The LMRA's secondary boycott ban applies only to labor organizations.  29 U.S.C. § 158(b)(4)(ii).

A labor organization is:

> any organization of any kind, or any agency or
> employee representation committee or plan, in which
> employees participate and which exists for the
> purpose, in whole or in part, of dealing with
> employers concerning grievances, labor disputes,
> wages, rates of pay, hours of employment, or
> conditions of work.

29 U.S.C. § 152(5).  Under the LMRA, an organization that does not "exist for the purpose of dealing with, or does not actually deal with, an employer over matters affecting employment" is not a labor organization.  *N.L.R.B. v. Peninsula Gen. Hosp. Med. Ctr.*, 36 F.3d 1262, 1270 (4th Cir. 1994).  "[D]ealing with" employees requires "a bilateral mechanism involving proposals from the [organization] concerning the subjects listed in [§ 152(5)], coupled with real or apparent consideration of those proposals by management."  *EFCO Corp. v. N.L.R.B.*, 215 F.3d 1318 (table), 2000 WL 632468, *5 (4th Cir. May 17, 2000).  Further, there must be "a pattern or practice" of proposals by the organization to the employer.  *Id.*

The WCS plaintiffs do not allege that the Fund exists to deal with or actually deals with employers.  *See* ECF No. 51

32

¶¶10-11.  According to the WCS plaintiffs' description, the Fund is prohibited from making proposals to employers.  *Id.*  Accordingly, the Fund is not a labor organization and is not bound by § 158.  The Fund's motion to dismiss will be granted.

III. Conclusion

For the reasons stated above, the defendants' motion to reassign will be denied.  UFCW 27 and 400's motion to dismiss will be granted in part and denied in part.  The Fund's motion to dismiss will be granted.

_____2/27/12_____

Date

_____

William D. Quarles, Jr.
United States District Judge

33